## Case No. 368.

### ANDREAE et al. v. REDFIELD.

[15 Int. Rev. Rec. 105.]

Circuit Court, W. D. New York. Jan. Term, 1872.

LIMITATIONS — ACTION AGAINST COLLECTOR FOR DUTIES PAID—PROMISE NOT TO PLEAD STATUTE.

[1. In a replication to a plea of the statute of limitations, an allegation that the defendant resided out of the state 11 months, without an averment that the statutory period has not elapsed, exclusive of the time of his absence, is insufficient.]

[2. In a suit against a collector of customs whose plea is the statute of limitations, a replication alleging that the United States, and not the collector, were liable for the amount claimed; that the United States had made a new promise, and had promised not to plead the statute, if it contains any substantial defense to the plea, is double, and therefore insufficient.]

[3. The granting of leave to put in several replications merely permits the parties to put the matters in the record, and is not an adjudication of their sufficiency.]

[4. Where leave is given in a suit against a revenue collector to set up in reply to a plea of the statute of limitations an agreement that, if the plaintiffs filed their claims with the collector, the statute should not be pleaded, with an averment that they did file such claims, a replication setting up an agreement that the statute should not be pleaded to any claims for refund accruing within six years prior to the commencement of a test suit decided in favor of the plaintiffs, and acquiesced in by the treasury department, that such test suit had been so decided and acquiesced in, and wherein such suit is not particularly described, nor the connection of the case at bar with the alleged agreement or test suit snown, is too vague.]

[5. The averment in such a replication of a complete promise by the secretary of the treasury 10 years before the bringing of the suit is

insufficient. The secretary's promise cannot be construed to operate without any limit as to time.]

[6. Act March 3, 1863, providing for the relief of collectors of customs by discharging their liability for unlawful collections out of the treasury, did not confer on the secretary of the treasury any such power that his promise not to plead the statute of limitations will avail plaintiffs in an action against a collector.]

[See note at end of case.]

[7. Where leave is granted to file four replications in an action against a collector of customs, of which the first two rest upon promises by the collector, and the last upon promises by the secretary of the treasury, as if the collector was a merely nominal defendant, such last replication is bad, since it is inconsistent with the others.]

[At law. Action by Otto Andreae and others against Herman J. Redfield, collector, for a refund of duties. Leave to file four replications was granted. On demurrer to the replications. Overruled in part.]

The following opinion discusses an important question of pleading in "Collectors' cases," under the act of March 3rd, 1863, and, in order that the points considered and disposed of may be more apparent, we give a synopsis of all the issues under the demurrer.

A. W. Griswold, John C. Darrow, and Samuel Hand, for plaintiffs.

Webster & Craig and H. J. Begly, for defendant.

WOODRUFF, Circuit Judge. This action is for money had and advanced, money paid, laid out and expended, had and received, etc., in the form of the ordinary money counts in assumpsit. The defendant, among other defences severally pleaded, by his third plea avers that the several causes of action did not, nor did either of them, accrue within six years before the commencement of this action. To this plea, the plaintiffs desired to file four replications, and, by the order produced on the hearing, it appears that the court, in 1867, made a special order permitting the plaintiffs to reply specially the matters specified in the order. The plaintiffs thereupon filed four several replications to the plea of the statute of limitations so pleaded. These replications are: 1st. That before the expiration of six years from the time when the moneys were had and received, etc., etc., by the defendant, the said defendant promised and agreed to and with the plaintiffs, that the statute of limitations should not be pleaded, in case the plaintiffs should file their claim to be refunded the said moneys, with the collector of the port of New York, and the plea avers that the plaintiffs did file and claim within the specified period. 2nd. That the plaintiffs within six years before the commencement of this suit renewed and ratified his promises in the declaration mentioned. 3rd. That after the causes of action had accrued to the plaintiffs,

the defendant departed from, and resided out of the state of New York, for the period of about eleven months. And 4th. That by the act of congress of March 3rd, 1863, the defendant was discharged from all personal liability to repay the said several sums of money in the complaint mentioned, officially collected by the defendant, and paid into the treasury of the United States, but that it was by the said act made the duty of the secretary of the treasury to repay the several sums of money officially collected by the said defendant upon a recovery of a judgment against him in a suit brought against him in his official capacity to recover the said moneys, and that the secretary of the treasury, within six years before the commencement of this suit, did undertake and promise to pay the said several sums of money in the complaint of the plaintiffs mentioned; and that the defendant, while collector of the port of New York, paid over to the United States the moneys exacted by him from the plaintiffs on the condition, trust and agreement that the United States should and would undertake and assume to bear and be responsible for all claims that should be made against him as such collector for moneys received and exacted by order of the treasury department, and that the moneys paid by the plaintiffs to the defendant as in the complaint mentioned were so exacted. That this suit is defended by the United States, and "that before the expiration of six years from the time when the said money was paid to the defendant by the plaintiffs and by the defendant to the treasury of the United States, and within six years next before the commencement of this action, the said secretary of the United States did officially promulgate and make known and promise, and agree to, and with these plaintiffs, that the statute of limitations should not be pleaded as to any claims for refund of money so officially collected accruing within six years next prior to the commencement of a test suit in such cases, when such test suit had been decided in favor of the claimants and such decision acquiesced in by the treasury department. That test suits for the recovery of such money, as is in the complaint of the said plaintiffs mentioned, so officially collected, had been commenced in the courts of the United States in the years 1855 and 1856, and determined in favor of the plaintiffs therein, and the decision therein had been acquiesced in by the treasury department by letters of instruction issued by the secretary of the treasury, dated October, 1856, and May, 1857." To these four replications the defendant demurred. These replications may be briefly described as, 1. Promise by the defendant not to plead the statute if the claims should be filed with the collector. 2. New promise by the defendant. 3. Absence of the collector for about eleven months from the state. 4. New promise by the secretary

of the treasury, and promise by the secretary of the treasury that the statute of limitations should not be pleaded if a test suit should be brought and decided in favor of the claimants.

As to the first of these replications, I should have had great doubts whether it was an answer at law to the pleas of the statute of limitations, but for the case of Gaylord v. Van Loan, 15 Wend. 308, and the cases therein referred to. Such an agreement, if to be enforced as an agreement, would seem to me to furnish occasion for an application to a court of equity to restrain the defendant from pleading his legal defence, where, by reason of the agreement, and what was done under it, it was inequitable to plead the statute. How it is, as an agreement. a legal answer to the plea is not obvious. The theory of an estoppel in pais makes the circumstances creating the estoppel conclusive evidence of the facts imported thereby, and as evidence of such fact it is useful. It is doubtless grossly inequitable for a defendant to plead the statute of limitations when, for a sufficient consideration, he has agreed with the plaintiffs that he will not; or to plead usury when, upon like consideration, he has agreed that he will not; or to set up any defence when, upon like consideration, he has agreed that he will not defend. But a replication to a plea setting up that the defendant, for a consideration, would not interpose any plea to the action would be a novelty at least. A court of equity can deal much better with agreements of this description, and can examine all the circumstances attending the making of the agreement and its performance, consider all the resulting equities, and grant or withhold an injunction or not as may be just. I, however, yield this doubt to the cases cited, especially since the defendant's counsel does not. in his argument, deny the sufficiency of the replication on any such ground.

The second replication does not seem to be objectionable upon any facts appearing in this replication or the plea to which it is addressed.

The third replication is clearly bad, and it seems to me frivolous. No issue can be joined upon it which will either determine the truth or legal effect of the plea, or avoid it. Suppose it to be found by a verdict that after the cause of action accrued, the defendant departed from and resided out of this state for about eleven months. It does not follow that six years have not elapsed since the cause of action accrued, exclusive of the period of such absence. The plaintiff should make his replication such that it takes his case out of the operation of the statute; i. e., such that if true he is entitled to recover. The issue here tendered is immaterial. When the statute exception "beyond seas" is pleaded, the replication should aver that six years have not elapsed since the

defendant returned. So are the precedents. and so here the replication should show that six years have not elapsed, exclusive of the period of absence. I say nothing on the question whether it is necessary, under the statute of New York, to reply this absence specially; it is sufficient for this occasion that he has seen fit to do so, and he cannot be permitted to force the defendant into an issue upon such a replication as he here interposes.

The fourth replication is a novel and most extraordinary pleading. Its phraseology suggests that it was framed as and for a bill of complaint in equity, and yet it is as vague, indefinite, and uncertain in some of its parts as a bill of complaint may sometimes be where the complainant avers ignorance of particulars, and prays a discovery thereof from the defendant. As a pleading at law a most obvious defect is that it is double, if it contains any substantial matter in avoidance of the plea. Assuming that it is a legal answer to the plea, then it contains two answers, one a new promise by the secretary of the treasury, and the other a promise by the secretary that the statute of limitations should not be pleaded on certain conditions specified. I can hardly suppose that the plaintiff's averment of the payment of the money to the United States upon a trust, was intended as an avoidance of the plea on the ground that to a trust the statute of limitations does not apply; that doctrine might avail in a proper case, to an action between cestui que trust and trustee; but if that was the purpose on an idea that here the United States is to be regarded as the debtor, then there is a third substantial matter of avoidance.

This is sufficient to dispose of the fourth replication, but to obviate an application for amendment, it may be proper to make some further suggestions.

The granting of leave of court to put in several replications is no adjudication of the sufficiency of the matters mentioned in the order to be replied. It merely permits the parties to put the matters in the record to become the subject of examination and adjudication.

In the next place, so far as the plaintiff seeks to sustain this fourth replication by the order giving leave to file it, it is sufficient to say that the leave given did not contemplate the setting up of such an agreement as it contains, nor by any means such vague and indefinite allegations as accompany it. The purpose of a pleading is to apprise the adverse party of the facts relied upon, and intended to be proved, in such form that he can put them in issue with some idea of what he may expect to meet on the trial. The leave given was to set up an agreement that if the plaintiffs filed their claims with the collector, the statute of limitations should not be pleaded, with an averment that they did file such claims. The

replication sets up an agreement that the statute should not be pleaded, as to any claims, for refund of money so officially collected, accruing within six years next prior to the commencement of a test suit in such cases, where such test suit had been decided in favor of the claimants, and such decision acquiesced in by the treasury department; and that test suits were commenced in the court of the United States in the years 1855 and 1856, and determined in favor of the plaintiffs therein, and such decision had been acquiesced in by the treasury department by letter issued by the secretary of the treasury, dated October, 1856, and May, 1857.

What is a test suit? On what particulars, in any answer to that question, can the defendant take issue if he wishes to do so under this replication? By whom, in what court, and where, have such suits been brought? Who were the parties, and by what particulars can they be identified, so that the defendant can take issue with the plaintiffs, and have some means of ascertaining that of which the replication should itself apprise him, viz; what is to be proved in support of the plaintiff's case?

Again, what connection have the causes of action in this suit with such agreement, or with such test suit? It is not averred in this replication that these moneys were paid to the defendant or to the United States before such agreement, or that the right to such moneys was involved in the suits referred to, or that the causes of action herein constituted claims for refund of money so officially collected accruing within six years next prior to the commencement of the test suits mentioned, or that a test suit was brought within six years after these causes of action accrued.

And again: If the agreement should be sustained, held, sufficiently pleaded and complied with, the decision of the test suit and the acquiescence of the secretary of the treasury are averred to have been completely communicated in May, 1857. Is it to be construed that such an agreement operates without any limit as to time? That the plaintiffs could wait ten years after such final acquiescence, and then bring suit unaffected by the statute of limitations? Clearly the order giving leave never contemplated such a replication as this; and if the replication cannot be sustained on this demurrer, without the aid of the order, it ought to be sustained on any ground.

Thus far I have treated this fourth replication as if the agreement by the secretary of the treasury could be pleaded in avoidance of the statute. I do not intend to countenance that view of the subject. The theory upon which the plaintiffs seek to justify this fourth replication makes their entire replication inconsistent, and any support the agreement gives to the fourth is destructive of the first and second replications. That theory is that the act of congress of March 3rd, 1863, has operated as sort of novation by which the United States has become the debtor of the plaintiffs, and the defendant is discharged from liability. He being, however, retained as a defendant in form, so that by due judicial proceedings the validity and amount of the plaintiffs' claims may be ascertained and determined. Hence, the United States, being the real defendant, the new promise by the secretary of treasury, and his promise that the statute of limitations shall not be pleaded, are operative and available to the plaintiffs. What then becomes of the first and second replications, which aver that the defendant, Redfield, made a new promise? and that he promised not to plead the statute? Surely if the statute deprived him of all interest, and relieved him of all liability, and cast it upon the United States so that the latter became and is the real debtor and the real defendant, then those promises of the nominal defendant cannot be permitted to prejudice the government. The theory of the plaintiffs cannot be used to sustain the promises of the secretary of the treasury, and be repudiated to sustain those of the nominal defendant, as an avoidance of the statute at law. I am, however, of opinion that the act of 1863 has neither wrought any change in the rules of law governing pleadings in the action, or in the tests to be applied to them by a court of law, nor has it conferred upon the secretary of the treasury any such power that his promise will avail the plaintiffs at all in their action at law against the defendant. The action must proceed governed by such rules as would govern the question of recovery, or no recovery at law, had no such statute been enacted. It is for the protection of the defendant, not for the benefit of the plaintiffs, that the statute intervenes to provide for the relief of the former by making provision to discharge his liability out of the treasury.

Under these views, the defendant must have judgment upon his demurrer to the third and fourth replications, and as to the first and second replications the demurrer must be overruled with leave to the defendant to rejoin.

[NOTE. Rejoinders were filed to the first and second replications, and issue joined thereon. While the cases were still pending, the plaintiffs filed a bill of complaint to restrain the respondents from pleading the statute of limitations in the action at law, setting up a promise by the customs officials and the secretary of the treasury not to plead the statute of limitations, new promises by both these officers, and the fact that in other actions, on similar facts, judgment had been given for the importers, and the excessive duties refunded by the government. The bill was dismissed by the circuit court, and on appeal the supreme court affirmed that decision, on the ground that conversations wherein the government officers said that under like circumstances it was not the custom of the treasury department to plead the statute of limitations did not amount to a promise not to plead the statute, nor to a new promise, be-

cause not in writing; that, if they did amount to such a contract, it was void for lack of consideration; and that the defendants were not estopped to plead the statute because both parties were equally well informed of all the facts. Miller and Field, JJ., dissented, on the ground that the acts and promises of the government officials amounted to an estoppel in equity to the plea of the statute of limitations. Andreae v. Redfield, 98 U. S. 225.]